UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM ELLIOTT ASHFORD,

     Plaintiff,

     v.

UNIVERSITY OF MICHIGAN,
UNIVERSITY OF MICHIGAN-DEARBORN,
GARY GORSKI, sued in his personal capacity,
JEFFREY EVANS, sued in his personal capacity,
DAVID HAWKINS, sued in his official capacity,
BRYAN DADEY, sued in his official capacity,
jointly and severally,

     Defendants.

Case No.: 20-cv-10561

Hon. Terrence G. Berg
Mag. Judge Elizabeth A. Stafford

---

| | |
|---|---|
| DEBORAH GORDON LAW | MILLER, CANFIELD, PADDOCK |
| Deborah L. Gordon (P27058) | and STONE, P.L.C. |
| Elizabeth Marzotto Taylor (P82061) | Jerome R. Watson (P27082) |
| *Attorneys for Plaintiff* | Brian M. Schwartz (P69018) |
| 33 Bloomfield Hills Parkway, Suite 220 | *Attorneys for Defendants* |
| Bloomfield Hills, MI 48304 | 150 West Jefferson, Suite 2500 |
| (248) 258-2500 | Detroit, MI 48226 |
| dgordon@deborahgordonlaw.com | (313) 963-6420 |
| emarzottotaylor@deborahgordonlaw.com | watson@millercanfield.com |
| | schwartzb@millercanfield.com |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE ISSUES PRESENTED ............................................. vii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... viii

INTRODUCTION.................................................................................1

SUMMARY OF RELEVANT FACTS AND PROCEDURAL STATUS ...................2

ARGUMENT .....................................................................................4

I.    APPLICABLE LEGAL STANDARD..................................................4

II.   THE REQUESTED FEES AND COSTS SHOULD BE SIGNIFICANTLY
      REDUCED BECAUSE THEY ARE NOT SUPPORTED BY
      CONTEMPORANEOUS EVIDENCE ....................................................6

III.  THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE
      SIGNIFICANTLY REDUCED BECAUSE THE AMOUNTS REQUESTED ARE
      NOT REASONABLE ......................................................................9

      A.   The Lodestar Amount is Not Reasonable Because Counsel's
           Hourly Rate is Not Reasonable or in Line With Customary Fees .....10

           1.   Gordon's Hourly Rate is Inflated and in Contradiction to
                the State Bar Survey that Ashford Relies Upon in His
                Motion...................................................................11

           2.   Ashford's Request for Marzotto Taylor's Fees are
                Equally Inflated and Unsupported ...........................................14

      B.   Even Based on the Incomplete and Inadequate Documentation
           Submitted with the Motion, it is Plain that at Least Some of the
           Requested Fees are not Recoverable.................................................15

           1.   Ashford's Verified Time Entries are Vague ...........................16

           2.   Ashford is not Entitled to Attorney Fees for Clerical
                Work........................................................................18

           3.   Media Relations is not Compensable under an Award of
                Reasonable Attorney Fees.......................................................19

           4.   Reasonable Attorney Fees does not Include Work
                Performed Prior to the Initiation of Litigation or Outside
                the Litigation ...........................................................20

**TABLE OF CONTENTS**
(continued)

**Page**

     5.     Ashford Fails to Adequately Claim Entitlement to Pre-
and Post-Judgment Interest ........................................................ 20

     6.     Gordon and Marzotto Taylor's Time Entries are
Excessive and Duplicative ......................................................... 21

     7.     Gordon and Marzotto Taylor's Time Worked Cannot be
Found Reasonable Over a Two-Week Work Suspension ........ 23

     8.     Ashford's Fees Calculations are Clearly Excessive and
Should at Least be Reduced Significantly if not Denied in
Their Entirety .......................................................................... 23

IV.   ASHFORD'S UNSUBSTANTIATED COSTS ARE NOT REASONABLE OR
RECOVERABLE ..................................................................................... 24

CONCLUSION ............................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Adcock-Ladd v. Sec'y of Treasury*,
227 F.3d 343 (6th Cir. 2000) ..................................................................9

*Allison v. City of Lansing*,
No. 5:03-CV-156, 2007 WL 2114726 (W.D. Mich. July 19, 2007) ................19

*Ashford v. Univ. of Michigan,*
89 F.4th 960 (6th Cir. 2024) ...................................................................3

*Auto All. Int'l, Inc. v. U.S. Customs Serv.*,
155 F. App'x 226 (6th Cir. 2005) ................................................... vii, 25

*B & G Mining, Inc. v. Office of Workers' Comp. Programs*,
522 F.3d 657 (6th Cir. 2008) .................................................................18

*Balcor Real Estate Holdings v. Walentas Phoenix Corp.*,
73 F.3d 150 (7th Cir. 1996) ...................................................................13

*Communities for Equity v. Michigan High Sch. Athletic Ass'n*,
No. 1:98-CV-479, 2008 WL 906031 (W.D. Mich. Mar. 31, 2008) ..............6, 16

*Doe v. Univ. of Michigan*,
78 F.4th 929 (6th Cir. 2023) .................................................................. vii

*Geier v. Sundquist*,
372 F.3d 784 (6th Cir. 2004) ........................................................... vii, 10

*Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*,
655 F. App'x 423 (6th Cir. 2016) ...........................................................5

*Gonter v. Hunt Valve Co.*,
510 F.3d 610 (6th Cir. 2007) ........................................................ vii, 6, 9

*Gratz v. Bollinger*,
353 F.Supp.2d 929 (E.D.Mich.2005) ...............................................16, 19

*Green v. Nevers*,
196 F.3d 627 (6th Cir. 1999) .................................................................21

*H.D.V. – Greektown, LLC v. City of Detroit*,
    660 F. App'x 375 (6th Cir. 2016) ........................................................5

*Harper v. BP Expl. & Oil, Inc.*,
    3 F. App'x 204 (6th Cir. 2001) ...................................................... vii

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)............................................................ vii, 4, 5, 6

*Hescott v. City of Saginaw*,
    No. 10-CV-13713, 2015 WL 13589671 (E.D. Mich. June 19, 2015).......... vii, 4

*Huguley v. Gen. Motors Corp.*,
    No. CIV. A. 83-2864, 1991 WL 88413 (E.D. Mich. May 26, 1991)..................8

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...............................................................9

*Kelley v. Metropolitan Cnty. Bd. Of Educ.*,
    773 F.2d 677 (6th Cir. 1985) ........................................................... vii

*Knop v. Johnson*,
    712 F. Supp. 571 (W.D. Mich. 1989) ..............................................6, 8

*Lay v. Astrue*,
    No. 5:10-cv-346-DLB, 2012 WL 5988822 (E.D. Ky. Nov. 29, 2012) .............18

*Lundsted v. JRV Holdings, LLC*,
    No. 14-CV-13981, 2016 WL 1665154 (E.D. Mich. Apr. 27, 2016).......... vii, 15

*Lynch v. Leis*,
    382 F.3d 642 (6th Cir. 2004) ........................................................... vii

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)........................................................................18

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983) .............................................................7

*Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*,
    590 F. App'x 597 (6th Cir. 2014) ....................................... vii, 24, 25

*Perry v. AutoZone Stores, Inc.*,
    624 F. App'x 370 (6th Cir. 2015) ..................................................16

*Poly-Flex Constr., Inc. v. Neyer, Tiseo & Hindo, Ltd.*,
    600 F. Supp. 2d 897 (W.D. Mich. 2009) .........................................16

*Potter v. Blue Cross Blue Shield of Michigan*,
    10 F. Supp. 3d 737 (E.D. Mich. 2014) ...........................................16

*Reed v. Rhodes*,
    179 F.3d 453 (6th Cir. 1999) ...................................................... vii, 9

*Salamango v. NCSPlus Inc.*,
    No. 2:14-CV-10189, 2014 WL 3900583 (E.D. Mich. Aug. 11, 2014) .............19

*Segovia v. Montgomery Cty., Tenn.*,
    593 F. App'x 488 (6th Cir. 2014) .............................................. vii, 10

*Smith v. Serv. Master Corp.*,
    592 F. App'x 363 (6th Cir. 2014) .............................................. vii, 15

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n,*
    *Local 307 v. G & M Roofing & Sheet Metal Co.*,
    732 F.2d 495 (6th Cir. 1984) ......................................................6

*Ursic v. Bethlehem Mines*,
    719 F.2d 670 (3rd Cir. 1983) ....................................................18

*Varlesi v. Wayne State Univ.*,
    No. 10-14793, 2013 WL 12180770 (E.D. Mich. Aug. 14, 2013) ...............17, 18

*Waldo v. Consumers Energy Co.*,
    726 F.3d 802 (6th Cir. 2013) ......................................................6

*Webb v. Bd. of Educ. of Dyer Cnty.*,
    Tenn., 471 U.S. 234 (1985) ....................................................20, 21

**STATUTES**

20 U.S.C. §§1681-1688 ...............................................................2

31 U.S.C. §§ 3729-3733 .............................................................11

42 U.S.C. §1983 ..................................................................2, 20

MCL 15.231, *et seq.* ............................................................................20

MCL 15.361, *et seq.* ..............................................................................2

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

Should this Court significantly reduce Plaintiff's requested fees and costs as unreasonable because: (1) the motion for attorneys' fees and costs is not supported by contemporaneous evidence; (2) counsel's requested hourly rate far exceeds what counsel would have billed Plaintiff, (3) counsel's after-the-fact billing records are vague and inherently unreliable and include duplicate entries, block billing, and fees for clerical tasks and are simply unreasonable, and (4) counsel's request for costs are unreasonable and unrecoverable under the law?

**Defendants assert that the answer is "Yes."**

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Auto All. Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226 (6th Cir. 2005)

*Doe v. Univ. of Michigan*, 78 F.4th 929 (6th Cir. 2023)

*Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004)

*Gonter v. Hunt Valve Co.*, 510 F.3d 610 (6th Cir. 2007)

*Harper v. BP Expl. & Oil, Inc.*, 3 F. App'x 204 (6th Cir. 2001)

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)

*Hescott v. City of Saginaw*, No. 10-CV-13713, 2015 WL 13589671 (E.D. Mich. June 19, 2015)

*Kelley v. Metropolitan Cnty. Bd. Of Educ.*, 773 F.2d 677 (6th Cir. 1985)

*Lundsted v. JRV Holdings, LLC*, No. 14-CV-13981, 2016 WL 1665154 (E.D. Mich. Apr. 27, 2016)

*Lynch v. Leis*, 382 F.3d 642 (6th Cir. 2004)

*Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597 (6th Cir. 2014)

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999)

*Segovia v. Montgomery Cty., Tenn.*, 593 F. App'x 488 (6th Cir. 2014)

*Smith v. Serv. Master Corp.*, 592 F. App'x 363 (6th Cir. 2014)

## **INTRODUCTION**

Plaintiff William Elliott Ashford ("Ashford") seeks relief that exceeds the clear bounds allowed by law and his supporting documentation is rife with errors, excessive billing, and requests for unrecoverable costs and fees. It is clear Ashford believes he should receive a windfall for having received a favorable jury award at trial. But an award of attorney fees is not meant to enrich a plaintiff's counsel beyond what is fair and reasonable. What Ashford is seeking is just the opposite.

This Court should deny or at the very least substantially reduce Ashford's request for fees and costs. Ashford's request should be significantly reduced for at least four reasons. **First**, Ashford has not provided sufficient contemporaneous evidence to support the requested fees and costs. His time records submitted in support of his motion were prepared after the alleged work was performed and is not kept through an official time keeping system, but rather, is merely a hodge-podge table created by his counsel. **Second**, the rate at which his counsel has calculated fees is unreasonable and an award based on that rate would be a windfall to counsel. Ashford fails to adequately consider all of the factors and relevant information in claiming an exorbitant hourly rate for his counsel. **Third**, Ashford's time entries include vague, duplicative, excessive, and unrecoverable time entries to improperly inflate his request for attorneys' fees. **Finally**, Ashford has failed to substantiate the necessity of the requested costs.

Simply put, Ashford is seeking fees and costs that are charged at an unreasonable rate and are unsupported by relevant evidence used to determine a proper award.

### SUMMARY OF RELEVANT FACTS AND PROCEDURAL STATUS

Ashford, a Department of Public Safety police officer divulged information gained by reason of his employment with DPS for something other than an official, authorized purpose by sharing details of an ongoing sexual assault investigation to a reporter.  (ECF No. 1, PageID.3.)  He made public statements that could have been reasonably interpreted as intending to have an adverse effect upon department morale and perception of the public when he made allegations of a cover-up to that reporter.  (ECF No.23-7, PageID.1034.) And he was insubordinate when he refused to answer questions during an investigation.  (*Id.* at 1035.) As a result, Plaintiff was suspended for ten workdays.  (*Id.*)

As a result of his suspension, Plaintiff filed his Complaint alleging that he was suspended in violation of 42 U.S.C. §1983, Title IX, the Michigan Whistleblower Protection Act, and Michigan public policy.  (ECF No. 1, PageID.17–25.)  Following discovery, Defendants filed a motion for summary judgment seeking to dismiss Ashford's Complaint.  (ECF No. 22, PageID.132–134.)  This Court dismissed Plaintiff's public policy claim, but otherwise denied Defendants' motion.

Defendants appealed the denial of immunity, and the Sixth Circuit affirmed.  (ECF No. 42; *Ashford v. Univ. of Michigan,* 89 F.4th 960, 970 (6th Cir. 2024).)

Despite the parties efforts to resolve this matter short of trial, a settlement was not reached and a jury trial began on May 7, 2024.  Following deliberations, the jury found in favor of Ashford, awarding him $2,481.60 in back-pay, $2,500 in emotional distress damages against Defendant Gorski, and $300,000 for emotional distress damages against the University of Michigan. (ECF No. 86, PageID.3373–3374.)  The jury did not award any damages against Defendant Evans.  The total amount awarded was substantially less than the $800,000 requested by Plaintiff from the jury.

Ashford later filed a proposed judgment, to which Defendants objected.  Those objections were sustained.  (ECF No. 81, PageID.3288-3294).  Ashford also filed a motion seeking various forms of equitable relief, which was largely denied.  The Court granted only a fraction of relief requested, denying Ashford's request for a declaratory judgment, limiting the scope of the equitable relief related to documents regarding his suspension, and denying Ashford's relief for an order enjoining further retaliatory acts.  (ECF No. 84, PageID.3358-3369).  In other words, the Court did not, as Ashford asserts, "award[] significant equitable relief."  (ECF No. 87, PageID.3386).

3

Ashford then filed the instant Motion for Attorneys' Fees and Costs[1]. (ECF No. 87, PageID.3375.)

## ARGUMENT

## I. APPLICABLE LEGAL STANDARD.

"The starting point in determining the reasonableness of attorney fees is the 'lodestar' method. Under this method, a reasonable rate is calculated by multiplying 'the number of hours reasonably expended' by 'a reasonable hourly rate.'" *Hescott v. City of Saginaw*, No. 10-CV-13713, 2015 WL 13589671, at *4 (E.D. Mich. June 19, 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).[2]

However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434. A downward adjustment may be necessary to reflect the "results obtained." *Id.* "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* "In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonable expended a satisfactory basis for making a fee award?" *Id.*

---

[1] Ashford did not comply with Local Rule 7.1 in good faith. Instead, his attorneys emailed Defendants' counsel at 6:14 p.m. seeking a concurrence and filed the motion at 6:59 p.m. the same day.
[2] Unpublished exhibits are attached as Exhibit 4.

"If … a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained." *Id.* at 436 (emphases added).

"There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* When reducing a fee award to account for a plaintiff's limited success, the district court must "employ a methodology that permits meaningful appellate review." *H.D.V. – Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 385 (6th Cir. 2016); *see also Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 443 (6th Cir. 2016) (remanding fee award because district court "left somewhat unclear why it chose a 62.5% reduction instead of, say, 52.5% or 72.5%"). And while district courts have

"discretion in making this equitable judgment," *Hensley*, 461 U.S. at 437, "a court should not measure a plaintiff's success simply by using a ratio of successful claims to claims raised" in determining a reduction of attorney's fees to reflect limited success, *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013).

## II.   THE REQUESTED FEES AND COSTS SHOULD BE SIGNIFICANTLY REDUCED BECAUSE THEY ARE NOT SUPPORTED BY CONTEMPORANEOUS EVIDENCE.

"To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007). Documentation offered in support of a request for attorneys' fees "is sufficient where it is contemporaneously compiled and sufficiently detailed to allow the Court to determine with certainty the number of hours reasonably expended on the litigation." *Knop v. Johnson*, 712 F. Supp. 571, 576 (W.D. Mich. 1989) (citing *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984) ("Where the documentation is inadequate, or recently compiled retrospective estimations of time expended, the district court would do violence to its judicial obligations were it to accept the amounts claimed at their value.")); *see also Communities for Equity v. Michigan High Sch. Athletic Ass'n*, No. 1:98-CV-

479, 2008 WL 906031, at *14 (W.D. Mich. Mar. 31, 2008) ("Any ambiguities arising out of poor time records should be resolved against the fee applicant.").[3]

Ashford failed to satisfy that burden here. Ashford does not provide the Court with the contemporaneous time records provided to him by his attorney, records which presumably would document the actual fees accrued. Instead, he submitted an after-the-fact, twenty-seven-page chart purporting to show the "verified" time spent on his case. (ECF No. 87-2, PageID.3403–3429.)  Indeed, the chart Ashford relies upon does not purport to be a contemporaneous time record compiled at the time the work was performed.  Rather, Ashford only refers to the document as "verified time records."  (ECF No. 87, PageID.3390.)  His motion is silent as to *when* the time records were created.

The chart is also deficient in that it fails to provide meaningful insight into the tasks performed[4] and is inherently unreliable, containing time entries rife with errors, double-recording, excessive hours for the tasks being performed, and billing for

---

[3] The reason for requiring contemporaneously-compiled records is simple: reconstructed records are notoriously inaccurate. *See, e.g.*, *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1142, 1147 (2d Cir. 1983) (recognizing "difficulties raised by the lack of contemporaneous records," including "inaccurate [entries] and … instances of excess and duplication").

[4] Ashford's request for costs is similarly ill-supported. In support of his claimed cost figured, Ashford provided: (1) a document titled "Verified Cost Records," which lists but does not describe in any detail an array of costs, including: copying costs, delivery costs, parking fees, transcript costs, filing costs (ECF No. 87-3, PageID.3431–3433.); and (2) an affidavit from counsel referring to "Litigation Costs." (ECF No. 87-5, PageID.3449–3451.)

tasks not clearly related to the litigation, as discussed in more detail below. Courts have denied fee requests for much less. *See Knop*, 712 F. Supp. at 576 (noting courts' discretion to "deny [a fee] petition in its entirety"); *Huguley v. Gen. Motors Corp.*, No. CIV. A. 83-2864, 1991 WL 88413, at *1 (E.D. Mich. May 26, 1991) (denying fee petition because documentation was based on inaccurate, reconstructed records).

Here, Ashford was not entirely successful in obtaining a favorable award from the jury.  Namely, the jury only awarded a portion of the damages he sought heading into trial.  And, although equitable relief was a significant component of his complaint, he only received a small portion of the relief he sought.  As a result, the fees expended cannot be seen as reasonable when the alleged work performed by his attorneys failed to garner an award representative of the amount of fees sought in the motion.  As it stands today, Ashford is seeking an award of attorney fees and costs of $499,582.85.  This amount exceeds the judgment awarded by the jury by nearly $200,000 and is more than 160% of the amount of the jury award.  (ECF No. 22, PageID. 3373–3374.)  And even if the fees were compensable in light of Ashford's limited success, the Court would be bound to significantly reduce the requested fees because of how poorly documented, and, as a result, unreliable, the fee records are.

### III.  THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE SIGNIFICANTLY REDUCED BECAUSE THE AMOUNTS REQUESTED ARE NOT REASONABLE.

A significant reduction to the requested fees and costs is warranted because Ashford's requested hourly rate and calculations are unreasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999) ("The primary concern in an attorney fee case is that the fee awarded be reasonable."); *see also Gonter*, 510 F.3d at 616 (same). A reasonable fee is "one that is adequate to attract competent counsel, but … [does] not produce windfalls to attorneys." *Reed*, 179 F.3d at 471 (citation omitted). "[C]ourts must remember that they do not have a mandate … to make the prevailing counsel rich." *Id.* at 472 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974)).

The first step is to calculate the lodestar amount is by multiplying the proven hours reasonably spent by an attorney by her "court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citations omitted). The court may adjust that amount based on "relevant considerations peculiar to the subject litigation." *Id*. (citing *Reed*, 179 F.3d at 471-72).

As set forth below, the lodestar amount calculated by Ashford is unreasonable and must be reduced because: (1) counsel's hourly rates are significantly overstated and lack support for the extremely high hourly rate requested; (2) the records

9

submitted are inadequate and unreliable;[5] and (3) the records include fees for non-compensable services.

### A. The Lodestar Amount is Not Reasonable Because Counsel's Hourly Rate is Not Reasonable or in Line With Customary Fees.

As the first step in its analysis, the Court must evaluate counsel's hourly rate, which is used to calculate the lodestar fee. *Segovia v. Montgomery Cty., Tenn.*, 593 F. App'x 488, 491 (6th Cir. 2014). To arrive at a reasonable hourly rate, courts often "use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Ashford calculated his suggested lodestar amount using an hourly rate of $710 for Deborah Gordon ("Gordon"). (ECF No. 87-2, PageID.3429.) This hourly rate is not reasonable because Ashford arbitrarily selects the highest hourly rate possible pursuant to the State Bar survey as her justification in requesting a $710 hourly rate.

---

[5] The other factors that a district court may consider in making adjustments to the lodestar amount also support a significant fee reduction: (1) the party's level of success; (2) the time and labor required; (3) the novelty and difficulty of the questions at issue; (4) the skill requisite to perform the legal service properly; (5) the preclusion of other employment by the attorney due to acceptance of the case; (6) the customary fee; (7) whether the fee is fixed or contingent; (8) time limitations imposed by the client or the circumstances; (9) the amount involved and the results obtained; (10) the experience, reputation, and ability of the attorneys; (11) the "undesirability" of the case; (12) the nature and length of the professional relationship with the client; and (13) awards in similar cases. *Segovia v. Montgomery Cty., Tenn.*, 593 F. App'x 488, 491 n.3 (6th Cir. 2014). Defendants address these factors below when discussing the billing deficiencies in the time records.

(ECF No. 87, PageID.3390–3393.)   Ashford also requests an hourly rate of $385 per hour for Gordon's Associate, Elizabeth Marzotto Taylor ("Marzotto Taylor"). (ECF No. 87, PageID.3392.)  As with Gordon, Ashford ignores relevant information that demonstrates Marzotto Taylor's work does not call for an hourly rate of $385 per hour.

### 1. Gordon's Hourly Rate is Inflated and in Contradiction to the State Bar Survey that Ashford Relies Upon in His Motion.

Initially, Ashford's only arguments in support of the $710 hourly rate – that Gordon was previously awarded $500 per hour in a case involving Wayne State University and later $600 per hour in connection with an FCA retaliation arbitration – does not justify the request for a $710 per hour fee. Ashford does not explain why the $500 or $600 per hour rate previously awarded to Gordon should translate to a $710 per hour award here.  (See ECF No. 87, PageID.3492.)  An arbitration relating to a False Claims Act claim is distinguishable on its face because this matter did not involve a claim under the False Claims Act or any claim even vaguely similar. Finally, arbitrators are not bound by the same rules and standards as apply in a case litigated in federal court, so it is not certain, for example, that the $600 hourly rate was deemed appropriate under the same analysis as applies herein. The Court should give no weight to the fees awarded in that arbitration or other cases relied on by Ashford.  If anything, this Court should rely on those situations to determine a $710 is inappropriate for Gordon.

Next, Ashford's request for a $710 hourly rate ignores aspects of the State Bar Survey that would call for a significantly lower hourly rate. Put another way, Ashford cherry-picked a category that had the highest potential rate without considering the myriad of other categories and tables included in the survey that would lead to a lower, more appropriate and reasonable hourly rate. Ashford's motion fails to provide sufficient documentation to support the use of 95th percentile for his counsel to employ in requesting attorney fees and also fails to fully disclose the lower percentiles of the hourly rates which results in a skewed representation of the hourly rates provided in the Survey. (ECF No. 87, PageID.3390.) Importantly, Ashford does not explain how the 95th percentile is reasonable when there are several other reasonable hourly rates he could have chosen. Put another way, Ashford does not contend median hourly rate for civil rights lawyers in Michigan of $350 per hour, or even the 75th percentile of $450 per hour, to be unreasonable. Instead, he simply selected the highest applicable rate to support his request for nearly a half a million dollars in attorneys' fees in a case where the verdict did not even reach that value. Still, Ashford's motion relies on the hourly rate provided in 95th percentile of the civil rights category of the table covering fields of practice. (ECF No. 87-4, PageID.3442.) Yet, that same table includes a category for plaintiff's employment lawyers which indicates the 95th percentile hourly rate tops out at $650 per hour. Ashford fails to explain why this Court is bound to the civil

12

rights lawyer hourly rate as opposed to the employment law when this case involved run-of-the-mill employment law retaliation issues.

To that end, Ashford also fails to explain why this Court should not consider the additional tables and applicable categories relevant to Gordon's experience. Namely, the tables Ashford ignores generally call for a lower hourly rate. By way of example, Table 4 of the Survey demonstrates the 95th percentile hourly rate for attorneys with more than 35 years of experience like Gordon would be $650 per hour. (ECF No. 87-4, PageID.3440.) Similarly, Table 6 covers hourly rates for lawyers by geographic practice area. (*Id.*, PageID.3441.) For Oakland County, south of M-59, where Gordon's practice is located, the 95th percentile is $600 per hour. (*Id.*) Oakland County's overall rate for the same percentile calls for a $637 hourly rate. (*Id.*, PageID.3445.) Overall, all of these examples highlight Ashford's tactical decision to focus only on a category that would allow for an inflated hourly rate that is not supported by a majority of the data included in the Survey.

Finally, it is telling that Ashford does not attach a copy of his fee agreement to the instant motion. In the event Ashford had a fee agreement that called for a specific hourly rate, the actual rate Gordon charged her client would be incredibly relevant in determining Gordon's hourly rate for the purposes of a motion for attorney fees. *Balcor Real Estate Holdings v. Walentas Phoenix Corp.*, 73 F.3d 150 (7th Cir. 1996) ("Courts award fees at the market rate, and the best evidence of the

13

market value of legal services is what people pay for it. Indeed, this is not "evidence" about market value; it is market value. Although courts interpolate the word "reasonable" into clauses of this kind, the best guarantee of reasonableness is willingness to pay.")   To that point, Ashford also fails to attach any record demonstrating that *any* client has paid Gordon at a rate of $710 per hour.  Instead, a more reasonable rate based on the information provided in the State Bar Survey would be $500 per hour for Gordon.

### 2.   *Ashford's Request for Marzotto Taylor's Fees are Equally Inflated and Unsupported.*

Ashford's misguided calculation for his counsel's lodestar rates also applies to Gordon's Associate.  In his motion, Ashford claims Marzotto Taylor should be entitled to an hourly rate of $385 based on her seven years of legal experience and because she was previously awarded $350 per hour in attorney fees in the same FCA matter Ashford cites in support of Gordon's claimed hourly rate.  (ECF No. 87, PageID.3993.)   As explained above, Ashford's calculation is unsupported by the State Bar Survey and he fails to offer relevant supporting documentation for Marzotto Taylor's rate.

First, this Court should give no weight to the fees awarded in the arbitration cited by Ashford when this matter did not involve a similar or analogous claim. Furthermore, because the arbitrator was not bound by the same rules applicable in this case, an arbitration award should not guide this Court.

Next, while Gordon has been practicing for years and may justify a rate at the 50th percentile or higher under the appropriate category, there is no evidence submitted by Ashford why Marzotto Taylor would qualify for the 95th percentile hourly rate. Ashford's motion fails to identify any rational basis for Marzotto Taylor to be paid at or above the median hourly rate of $300 per hour for an attorney with seven years of experience. Likewise, the State Bar Survey does not support Taylor's rate to be set at $385 per hour. The median rate for an associate attorney like Marzotto Taylor garners an hourly rate of $275 per hour. (ECF No. 87-4, PageID.3439.) Additionally, the median hourly rate for an attorney in Oakland County (south of M-59) amounts to $325 per hour. (*Id.*, PageID.3440.) The median hourly rate for Oakland County in general also averages to $325 per hour.

Overall, Ashford fails to provide sufficient documentation that would warrant the enhanced hourly rate he requests for Marzotto Taylor.

**B.    Even Based on the Incomplete and Inadequate Documentation Submitted with the Motion, it is Plain that at Least Some of the Requested Fees are not Recoverable.**

Ashford must provide the Court with "sufficiently detailed" billing records that "enable [the Court] to review the reasonableness of the hours expended." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014); *Lundsted v. JRV Holdings, LLC*, No. 14-CV-13981, 2016 WL 1665154, at *6 (E.D. Mich. Apr. 27, 2016) ("Billing records must describe the work performed in sufficient detail to

establish that the work is reasonably related to the matter for which the fee is requested." (quotations omitted)). The Court then has the "obligation to scrutinize line-by-line bills" to ensure reasonableness. *Poly-Flex Constr., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 600 F. Supp. 2d 897, 918 (W.D. Mich. 2009). Ashford's fees, as evidenced in his purported "verified time records," are overstated as demonstrated by vague and double-billed time entries; the inclusion of administrative/clerical time in his estimates, including numerous identical entries for time billed by both attorneys, and several other flawed time entries that require scrutiny.

### 1.   *Ashford's Verified Time Entries are Vague.*

As an initial matter, many of the time entries included are vague, which prevents this Court from disaggregating the time spent on the respective tasks and judging the reasonableness of the fees requested for such tasks. *See* ECF No. 87-2, PageID.3403–3429.  *See Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 373 (6th Cir. 2015) (holding that entries for "Prepare and Draft Appellee Brief" were insufficiently specific); *Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737, 764 (E.D. Mich. 2014) (reducing award by 5% for vague entries and block billing); *Gratz*, 353 F. Supp. 2d at 939 (reducing award by 10% for vague entries such as "office conference"; "telephone conference"; "review article"; and "review correspondence"); *Communities for Equity*, 2008 WL 906031, at *23 (ordering an across-the-board reduction for "fees for fees" hours claimed, and further reducing

award by a 10% across-the-board reduction for vagueness, excessiveness, and duplicity in the hours billed).

Non-exhaustive examples of counsel's vague entries include: (a) July 2, 2021: "Review deps; pull facts"; (b) April 26, 2024 (repeated throughout): "Conversation with witness"; and (c) April 22, 2024 (and throughout): "Call with Client." (ECF No. 87-2, PageID.3403–3429.) These vague entries warrant an across-the-board reduction. Likewise, there are multiple entries that list *identical* tasks and *identical* hours (or, in some instances, hour totals that differ only slightly) spent on tasks by Gordon and her Associate. (*Id.*)[6] It defies credulity to imagine that Gordon, who has been practicing law for 43 years (ECF No. 192, PageID.5220), and her associate, Marzotto Taylor, who has been a practicing attorney since 2017 (ECF No. 192, PageID.5222), were performing identical tasks for the identical number of hours on numerous occasions. If anything, based on Gordon's years of experience she should be able to perform the tasks at a more efficient (i.e., less time involved) pace.  And, to the extent Gordon was performing work that could have been delegated, a fee reduction is warranted. *See, e.g.*, *Varlesi v. Wayne State Univ.*, No. 10-14793, 2013 WL 12180770, at *3 (E.D. Mich. Aug. 14, 2013) (applying a 2% reduction for work

---

[6] To wit: 10/24/2023 entry listing 1.5 hours for both with the description "Discuss oral argument"; 10/20/2023 entry listing 1.5 hours for both with the description "Discuss/strategize oral argument"; and 4/11/24 entry listing 1.2 hours for both with the description "Discuss jury instructions." (ECF No. 87-2, PageID.3403–3429.)

that was unnecessarily completed by Gordon instead of being delegated to an associate), *report and recommendation adopted in part, rejected in part*, No. 10-14793, 2017 WL 3097948 (E.D. Mich. July 21, 2017); *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3rd Cir. 1983) (disapproving of the use of highly skilled and priced talent for matters that should have been delegated to non-professionals or less experienced associates; "A Michealangelo should not charge Sistine Chapel rates for painting a farmer's barn.").

### 2. *Ashford is not Entitled to Attorney Fees for Clerical Work.*

Next, Ashford includes time for administrative and clerical tasks in his fee calculation. It is well established the clerical or secretarial work is not compensable for the purposes of awarding attorney fees. *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). This is because clerical work mainly involves tasks that do not require legal knowledge in the form an attorney is expected to perform. *Lay v. Astrue*, No. 5:10-cv-346-DLB, 2012 WL 5988822, at 5 (E.D. Ky. Nov. 29, 2012) (citing *B & G Mining, Inc. v. Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008) ("receiving and filing correspondence presumably constitutes clerical work")).

In this case, Ashford improperly and routinely bills for clerical work. For example, Ashford lists clerical time entries for the filing of documents on 3/3/2020, 6/30/2021, 7/21/2020, 8/27/2020, 7/20/2021 and continues to list several other

clerical entries through May 18, 2024. (ECF No. 87-2, PageID.3403–3429.) Those

amounts, and all others like them, must be deducted from any award. *See Salamango*

*v. NCSPlus Inc.*, No. 2:14-CV-10189, 2014 WL 3900583, at \*6 (E.D. Mich. Aug.

11, 2014) ("It is well-settled that purely clerical tasks, even performed by a paralegal,

cannot be included in an award of attorney's fees."); *Allison v. City of Lansing*, No.

5:03-CV-156, 2007 WL 2114726, at \*1 (W.D. Mich. July 19, 2007) (declining to

award fees for time spent on ministerial and clerical tasks).

### 3.     *Media Relations is not Compensable under an Award of Reasonable Attorney Fees.*

Additionally, Ashford attempts to include time billed for media relations.

(ECF No. 87-2, PageID.3404.)  Courts have held that unless a party can demonstrate

its communications with the media contributed in a meaningful way to the litigation,

media relations are not compensable in an award for attorney fees.  *Gratz v.*

*Bollinger,* 353 F.Supp.2d 929, 941 (E.D.Mich.2005).  Here, Ashford has made no

such showing.  There is no discussion as to the necessity for Ashford or his counsel

to speak with the media regarding this case.  Moreover, Ashford has failed to

demonstrate through his motion (or even raise the argument) that any discussion

with the media was a meaningful contribution to the litigation itself.  Because

Ashford has failed to establish these facts, his claim for attorney fees for media

relations should be removed.

### 4. Reasonable Attorney Fees does not Include Work Performed Prior to the Initiation of Litigation or Outside the Litigation.

Ashford also improperly claims pre-lawsuit billing on behalf of his attorneys, including a substantial amount of time that occurred before Ashford was even suspended. Specifically, Ashford's time records include several entries between 11/5/2019 and 2/5/2019 before Gordon was even retained by Ashford in the instant matter. (ECF No. 87-2, PageID.3403.) However, time spent by an attorney prior to the lawsuit being drafted and filed is not recoverable. *Webb v. Bd. of Educ. of Dyer Cnty.*, Tenn., 471 U.S. 234, 241 (1985) (finding that a prevailing party in a §1983 lawsuit is not entitled to reasonable attorney fees for proceedings that took place prior to the lawsuit having been filed.) Here, Ashford is seeking attorney fees for work that was allegedly performed by Gordon and Marzotto Taylor before they were retained to represent him[7] and before the adverse action that forms the basis of his retaliation claims occurred.[8] The law simply does not permit these types of fees.

### 5. Ashford Fails to Adequately Claim Entitlement to Pre-and Post-Judgment Interest.

In addition to the improper billing discuss above, Ashford also claims right to pre- and post-judgment interest. (ECF No. 87, PageID.3398.) However, Ashford

---

[7] A retainer agreement was not drafted until February 4, 2020.

[8] For the same reason, fees spent as part of Freedom of Information Act requests are not compensable. "Administrative proceedings … created by state law simply are not any part of the proceedings to enforce § 1983." *Webb*, 471 U.S. at 241.

fails to identify why or how he would be entitled to either pre- or post-judgment interest in this case. (*Id.*)  Rather, Ashford simply cites vaguely to several cases and statutes after proclaiming his legal conclusion of entitlement to interest. (*Id.*)  Still, the cases cited are distinguished from the instant matter.  By way of example, the *Green* case involved questions of whether the plaintiff was entitled to interest that accrued on his portion of the settlement while in escrow.  *Green v. Nevers*, 196 F.3d 627, 633 (6th Cir. 1999).  There are no analogous facts to the instant case that would support Ashford's theory of entitlement to interest.  Because Ashford fails to detail his legal argument for entitlement to pre- and post-judgment interest, this request should be disregarded by this Court.

### 6.   *Gordon and Marzotto Taylor's Time Entries are Excessive and Duplicative.*

Included in Ashford's verified time records are numerous excessive and/or duplicative time entries by Gordon and Marzotto Taylor.  For example, Marzotto Taylor billed 3.2 hours and 1.3 hours on 6/29/2020 and 9/28/2020 respectively, to review discovery responses.  (ECF No. 87-2, PageID.3405–3406.)  Ashford fails to reconcile why it would be reasonable for Marzotto Taylor to expend 4.5 hours to review the same document twice.  Additionally, Marzotto Taylor billed in excess of 20 hours on drafting "facts for MSJ response."  (ECF No. 87-2, PageID.3408.)  While this alone is excessive for a single section of a brief, Marzotto Taylor then spent in excess of 30 hours preparing an appellate brief that includes a nearly

verbatim regurgitation of the facts she prepared for the response to the motion for summary judgment.  (ECF No. 26; Exhibit 1, Plaintiff's Factual History Section in Response to Motion for Summary Judgment; Exhibit 2, Plaintiff's Factual History Section in Brief on Appeal.)  Expanding further on Ashford's excessively claimed hours, the time records also include several days in which Gordon billed in excess of 14 hours in a single day on this case alone.  (ECF No. 87-2, PageID.3423–3427.)  Specifically, on 5/8/2024, 5/15/2024, and 5/20/2024, Gordon billed in excess of 14 hours in for each of those days for work allegedly performed in this case.  (*Id*.)  And on one day (5/16/2024), both attorneys billed 17+ hours.  (*Id.*)

Additionally, Ashford improperly claims to be entitled to fees for unsuccessful work performed by Gordon and Marzotto Taylor.  Namely, Ashford includes hours for his counsel's unsuccessful attempt to amend his complaint to bring in additional claims that this Court denied.  (ECF No. 87-2, PageID.3410.)  He also attempts to claim hours for his largely unsuccessful motion for equitable relief.  (ECF No. 87-2, PageID.3427–3428.)  The hours claimed by Ashford in his verified time record cannot be deemed reasonable, accurate or actually incurred when fully examined in detail.  Indeed, neither Gordon nor Marzotto Taylor attest to having reviewed the bills and having eliminated excessive, redundant, or unnecessary entries.

In sum, the records Ashford submitted in support of his claim for attorneys' fees are inadequate, vague, and at times manifestly and inherently unreliable, and deprive Defendants and the Court of the opportunity to fully evaluate the reasonableness factor.

### 7. *Gordon and Marzotto Taylor's Time Worked Cannot be Found Reasonable Over a Two-Week Work Suspension.*

Ashford's motion fails to articulate how the amount of time expended over a two-week work suspension was reasonable where he freely admits the case had a potentially low value.  (ECF No. 87, PageID.3396.)  In support of his motion, Ashford alleges on one hand that the case was undesirable admitting the potential value of the case being low.  (*Id*.)  However, despite this information, Ashford's counsel alleges to have expended excessive hours on this case.  Ashford's motion leaves it to the imagination of the Court as to how Gordon and Marzotto Taylors' alleged hours expended could be reasonable in light of the fact the case stemmed from a two-week suspension from work.

### 8. *Ashford's Fees Calculations are Clearly Excessive and Should at Least be Reduced Significantly if not Denied in Their Entirety.*

As discussed thoroughly above, Ashford's fees calculations are overstated and rife with errors.  Still, in the event this Court is willing to award attorneys' fees to Ashford, it should significantly reduce Ashford's requested fees pursuant to the arguments raised in Defendants' instant brief.  By way of example, Defendants offer

a rebuttal to Ashford's "Verified Time Record" applying more reasonable rates for Gordon and Marzotto Taylor along with specific notations for excessive, duplicative, and unrecoverable time entries.  (Exhibit 3, Defendants' Rebuttal Time Record.) Based on the information provided in the State Bar Survey, a more reasonable rate for Gordon would be $500 per hour, and $325 for Marzotto Taylor.   (*Id*.) Furthermore, applying the arguments set forth above, Gordon's time entries should be reduced by at least 33.85 hours for her inflated and unrecoverable time.  (*Id*.) Similarly, Marzotto Taylor's time should be reduced by at least 78.36 hours for her excessive, duplicative and unrecoverable entries.  And, given that many other entries are vague and prevent the Court and Defendants from evaluating whether the time spent was reasonable or excessive, an additional 30% across the board reduction is appropriate.  Ultimately, applying the more reasonable hourly rate supported by the Survey, and when removing impermissible time entries, a more reasonable award would total $236,352.58 – *at most.*  (*Id*.)

## IV.   ASHFORD'S   UNSUBSTANTIATED   COSTS   ARE   NOT REASONABLE OR RECOVERABLE.

As with fees, "[i]t is the responsibility of the prevailing party to document and provide evidence regarding the reasonableness of the costs and expenses for which it is seeking an award." *Ohio Right to Life Soc'y, Inc.*, 590 F. App'x at 605. Where the requesting party does not meet its burden – for example, where the requesting party "fail[s] to submit any evidence or argument that might support an allowance

of … costs," including "how the charges were reasonably related to the issues raised in the … litigation" – it is within the district court's discretion to deny costs altogether. *Auto All. Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 229 (6th Cir. 2005) (affirming a trial court's denial of costs).

Ashford asserts he is entitled to $16,332.09 in costs and in support of that assertion, he offers a vague cost chart that lacks sufficient detail to properly analyze its authenticity. (ECF No. 87-3, PageID.3431–3433.) Namely, Ashford submits bare descriptions that lack sufficient information linking the alleged costs to this matter. For example, the documentation lists only "2020 Feb Copies," and *thirty-seven* similar entries for other months, without any further explanation. (*Id.*) Ashford similarly seeks postage for six different months without any other information. (*Id.*) Finally, Ashford attempts to claim costs for parking for Sarah Thomas to attend trial on 5/23/2024. (ECF No. 87-3, PageID.3432.) Ms. Thomas is the daughter of Gordon and was not part of Ashford's legal team nor was she a witness called at trial.

Because Ashford has not met his burden, Defendants request that the Court disallow those costs as well as any costs have already been rejected by the Clerk.[9] (ECF No. 89). *See, e.g.*, *Ohio Right to Life Soc'y*, 590 F. App'x at 605-06 (affirming

---

[9] On September 5, 2024, Plaintiff filed a motion to review the taxed costs. (ECF No. 90). Contemporaneous with the filing of this response, Defendants are responding to that motion, explaining how several of Plaintiff's costs are not recoverable.

district court's denial of fees where "[m]any of Plaintiff's requested expenses take the form of statements such as 'Computer Research,' 'Delivery Fee,' and 'Document Reproduction' without further explanation").

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant respectfully request that the Court deny or reduce any award of attorneys' fees and costs to Doe's counsel as set forth herein.

Dated: September 11, 2024             Respectfully submitted,

                                      */s/ Brian M. Schwartz*
                                      Brian M. Schwartz (P69018)
                                      MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
                                      *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2024, I electronically filed the foregoing opposition with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record.

/s/ Brian M. Schwartz
Brian M. Schwartz (P69018)