UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM ELLIOTT ASHFORD,** | **2:20-CV-10561-TGB-EAS** |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | |
| | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS (ECF NO. 87) AND GRANTING PLAINTIFF'S MOTION TO REVIEW COSTS TAXED (ECF NO. 90)** |
| **UNIVERSITY OF MICHIGAN, *et al.,*** | |
| Defendants. | |

After a motion for summary disposition, an appeal to the Sixth Circuit, and a nine-day trial, a federal jury returned a verdict in favor of Plaintiff William Elliott Ashford's on all counts. Presently before the Court is Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 87) pursuant to 42 U.S.C. § 1988 and Motion to Review Costs Taxed (ECF No. 90). For the reasons set forth below, the Motion for Attorney's Fees (ECF No. 87) will be **GRANTED IN PART** and **DENIED IN PART** and the Motion to Review Costs will be **GRANTED** (ECF No. 90).

## I.   BACKGROUND

William Elliott Ashford is a police officer in the Department of Public Safety at the University of Michigan-Dearborn campus. The facts giving rise to this case have been set out at length in prior orders.

In summary, in 2019, Ashford became concerned that the University of Michigan and his Department were attempting to cover up a report that a student had been sexually assaulted by her professor. After some failed attempts to raise the matter internally, both with his Department and the University of Michigan as a whole, he and another security officer spoke anonymously with a *Detroit News* reporter about the allegations against the professor. Eventually, the reporter published a story about the incident and the investigation into it.

Following the publication of the reporter's article, the University learned that Ashford had spoken with the reporter, and Ashford was charged with violating two internal policies, which prohibited: (1) making "statements that reasonably can be interpreted as intending to have an adverse effect upon department morale, discipline, operation of the Department, or perception of the public," and (2) "divulging of willfully permitting to have divulged any information gained by reason of [his] position for anything other than its official authorized purpose." In January 2020, he was suspended for 10 days.

Ashford initiated this action in March 2020, seeking damages and declaratory and injunctive relief. ECF No. 1. His complaint asserted four claims: (I) retaliation in violation of the First Amendment, 42 U.S.C. § 1983; (II) retaliation in violation of Title IX; (III) retaliation in violation of Michigan's Whistleblower Protection Act; and (IV) retaliation in violation of Michigan public policy. *Id*. At summary judgment, the Court

allowed all but Count IV to proceed to trial. Defendants appealed this ruling, and the Sixth Circuit affirmed it. *Ashford v. Univ. of Mich.*, 89 F.4th 960, 970 (6th Cir. 2024).

Ultimately, after 9 days of trial, on May 21, 2024, a jury found that Defendants retaliated against Plaintiff for engaging in activity that was protected under the First Amendment, Title IX, and Michigan's Whistleblower Protection Act ("WPA"). ECF No. 73. The jury awarded Ashford $2,481.60 as backpay for his 10-day unpaid suspension, $2,500.00 in emotional distress damages from Defendant Gary Gorski on the First Amendment claim, and $300,000.00 in emotional distress damages from the University of Michigan on the WPA claim. The Court later awarded Ashford equitable relief in the form of a permanent injunction expunging his employment record of the unlawful suspension but denied Ashford's other requests for declaratory judgment and injunction to prevent further retaliatory acts. *See* ECF Nos 84 & 85.

On August 28, 2024, Ashford filed the instant Motion for Attorneys' Fees and Costs, seeking $499,522.85 in attorneys' fees (which he later supplemented for a total of $505,004.85), $16,332.09 in costs, as well as an additional $8,581.02 in taxable costs. ECF Nos. 87, 90, & 96-4. The University filed a response opposing Ashford's motion, asking the Court to significantly reduce any award of attorneys' fees and costs to Ashford's counsel. ECF No. 92. Defendants assert (1) Deborah Gordon's hourly rate should be reduced from $710 to $500 and her time reduced by at least

33.85 hours, (2) Elizabeth Marzotto Taylor's hourly rate should be reduced from $385 to $325 and her time should be reduced by at least 78.36 hours, and (3) a 30% reduction should be applied to account for vague entries—for a total attorneys' fees amount of $236,352.58. *Id.*

## II. LEGAL STANDARD

The prevailing party in an action under 42 U.S.C. § 1983 can recover attorney's fees under 42 U.S.C. § 1988(b). The prevailing party may also recover costs for "incidental and necessary expenses incurred in furnishing effective and competent representation." *Northcross v. Bd. of Ed. of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir. 1979), *holding modified by Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268 (6th Cir. 1983) (including reasonable travel expenses, photocopying, and other costs). In the Sixth Circuit, courts use the lodestar method to calculate a reasonable fee, which involves "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Courts have discretion in determining what fee amount is reasonable, and other considerations "may lead the district court to adjust the [lodestar] fee upward or downward." *Hensley*, 461 U.S. at 434.[1]

---

[1] Courts may consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other

In any event, the district court must "provide a concise but clear explanation of its reasons for the award." *Id.* at 437. The party seeking attorneys' fees bears the burden of establishing and documenting his entitlement to the award. *Id.* But a request for attorneys' fees "should not result in a second major litigation. *Id.*; *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

## III.   DISCUSSION

Ashford is seeking $505,004.85 in attorneys' fees,[2] $16,332.09 in costs, and an additional $8,581.02 in taxable costs.

### A. Attorneys' Fees

There is no dispute that Ashford is the prevailing party in this action. The question before the Court is whether Ashford's lodestar amount—the number of hours expended on the litigation multiplied by an hourly rate—is reasonable. *See Hensley*, 461 U.S. at 434. Ashford's

---

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.

[2] Plaintiff supplemented his request for fees in the Reply to the Motion for Attorneys' Fees, adding 13.45 hours for counsel's work on the Reply and the Motion to Review Costs. ECF No. 96-4, PageID.3925–26. The propriety of Plaintiff's supplemental request for fees in his Reply is discussed below.

requested fees in the amount of $505,004.85 represent 100 percent of a lodestar that rests upon hourly rates of (1) $710 for attorney Deborah Gordon and (2) $385 for attorney Elizabeth Marzotto Taylor. According to counsel's billing records, Gordon worked 420.35 hours and Marzotto Taylor worked 536.51 hours. Ashford, as the fee applicant, bears the burden to produce evidence to support that his request is reasonable. *See id.* at 433.

### 1. Reasonable Hourly Rate

A reasonable hourly rate is the prevailing market rate in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004) (citing to *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)). District courts have "broad discretion" to determine what constitutes a reasonable hourly rate for an attorney. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). They may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests" to make that determination. *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016) (citation omitted); *see also United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 504 (6th Cir. 1984) ("[T]he determination

of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel.").

Ashford requests an hourly rate of $710 for Gordon and $385 for Taylor based on Gordon's experience, the complexity of the issues presented, and the 2023 State Bar of Michigan Economics of Law Survey Results. Exhibit 3, ECF No. 87-4, PageID.3435–47. Defendants contend the requested rates are excessive and should be reduced to $500 and $300 respectively.

Gordon has been a practicing trial attorney for 43 years, specializing throughout that time in employment discrimination, personal injury, and civil rights. Defendants argue Ashford "arbitrarily" selected the highest hourly rate possible in the Survey at *the 95th percentile for civil rights cases*, when the hourly rate at the 75th percentile is $450 for civil rights cases and $400 for attorneys with more than 35 years of experience, and the hourly rate at the 95th percentile is $637 for attorneys in Oakland County, $650 for attorneys with more than 35 years of experience, or $650 for attorneys practicing in employment law.[3] But Gordon received awards at the 95th percentile in analogous cases—up to an hourly rate of $710—and she deserves compensation at this percentile as an experienced and highly regarded counsel in the field

_____

[3] Defendants' argument that the rate for employment law should apply is unavailing as Plaintiff's entitlement to fees stems from 42 U.S.C. § 1988, which expressly governs "Proceedings in vindication of civil right."

of civil rights. *See, e.g.*, ECF No. 87-7, PageID.3471, *Varlesi v. Wayne State Univ. et al.*, No. 10-14793 (E.D. Mich. July 21, 2017)(Hood, J.) ("The Court finds that Ms. Gordon is entitled to the 95th percentile of civil rights and plaintiff's employment law attorneys in the State of Michigan . . . [and that] the hourly rate . . . is reasonable based on [her] experience, recognition and success[.]"). Gordon's requested hourly rate of $710 is within the prevailing rate for an attorney in the 95th percentile with more than 35 years of experience ($650) practicing in civil rights ($710) in Michigan based on the Survey, and is reasonable based on her experience, recognition, and success.

Marzotto Taylor has worked as a litigator at Deborah Gordon Law for seven years. Defendants similarly argue the requested fee of $385 is excessive and should be reduced to $325. But the requested rate is within the median rate for attorneys practicing in civil rights ($350) and the highest rate for attorneys with 6 to 10 years of experience ($585)—and is exactly that of attorneys at the 75th percentile with similar years of experience ($385). Given Marzotto Taylor's experience, success in this case, and the prevailing rates in the community, the requested fee is reasonable.

### 2. Number of Hours Reasonably Expended

"The district court . . . should exclude . . . hours that were not reasonably expended." *Hensley*, 461 U.S. at 434; *but see Fox*, 563 U.S. at

838 ("[T]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

### (a)   Sufficiency of the Documentation

"To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007). Documentation offered in support of a request for attorneys' fees "is sufficient where it is contemporaneously compiled and sufficiently detailed to allow the Court to determine with certainty the number of hours reasonably expended on the litigation." *Knop v. Johnson*, 712 F. Supp. 571, 576 (W.D. Mich. 1989); *see also Local 307*, 732 F.2d at 502 (warning against "recently compiled retrospective estimations of time expended").

Defendants complain that Plaintiff's billing data is "inherently unreliable." ECF No. 92, PageID3568. But Plaintiff clarified in his Reply that his "Verified Time Records" were "contemporaneous billing data compiled throughout this litigation." ECF No. 96, PageID.3799. The time records specify the date that time was billed, the individual billing the time, the fractional hours billed, and the specific task completed. *See* ECF No. 96-4, PageID.3900–26. Nothing in the time records suggests they were not compiled throughout the life of the case.

Defendants also complain that some time entries are vague, namely:

- October 2, 2020: entry listing 0.5 hours with the description "Extension of scheduling order dates";
- July 2, 2021: entry listing 4.65 hours with the description "Review deps; pull facts";
- April 13, 2022: entry listing 0.6 hours f with the description "Send mediation info to Bogas"
- April 26, 2024: entry listing 1.10 hours with the description "Conversation with witness";
- April 22, 2024: entry listing 0.25 hours with the description "Call with Client":
- April 29, 2024: entry listing 1.20 hours with the description "Call with prospective witness"; and,
- May 6, 2024: entry listing 1.25 hours for both with the description "Meet with prospective witness."

*Id.* Defendants argue the vague entries warrant an across-the-board reduction. *See, e.g.*, *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. Jan. 27, 2005)(Duggan, J.) (reducing award by 10% for vague entries). But while billing records must be "sufficiently detailed" to "enable [the Court] to review the reasonableness of the hours expended," *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014), "excessive detail on each minute spent in the litigation is not required," *Hensley*, 461 U.S. at 437 n.12. "[I]temized statements describing the subject matter, the attorney, the time of allotment, and the charge for all work done on Plaintiffs' case" can be sufficient. *Imwalle*, 515 F.3d at 553 (noting that entries with "only the briefest description of the task completed," when read "in context" of the entire billing statement and "in conjunction with the timeline of the litigation," can be sufficient).

Unlike vague entries such as "telephone conference" or "review correspondence," which make it impossible for a court to determine whether the entries were related to the litigation, *Gratz*, 353 F. Supp. 2d at 939, here the entries describe, for instance, conversations between counsel and the client or a witness, supporting a finding that the hours were reasonably related to the litigation and actually expended. Thus, the Court finds that the allegedly vague entries sufficiently describe the general subject-matter, and when read "in conjunction with the timeline of the litigation," sufficiently allow the Court to determine that the hours described were "actually and reasonably expended" in relation with the litigation.

### (b)   *Duplicative and Excessive Entries*

Defendants contend Ashford's billing records are overstated, as evidenced by "double-billed time entries" listing identical tasks and hours for both Gordon and Marzotto Taylor. But that argument is disingenuous, as the tasks Defendants point to required both lawyers' participation, as a two-person legal team:

- October 24, 2023: entry listing 1.5 hours for both with the description "Discuss oral argument";
- October 20, 2023: entry listing 1.5 hours for both with the description "Discuss/strategize oral argument"; and.
- April 11, 2024: entry listing 1.2 hours for both with the description "Discuss jury instructions."

ECF No. 96-4, PageID.3900–26. "Multiple-lawyer litigation is common and not inherently unreasonable." *City of Riverview v. Operating*

*Engineers*, 2019 WL 8301970, at \*5 (E.D. Mich. Nov. 14, 2019) (cautioning courts to consider whether a case is "overstaffed"). Here, it is arguable that by maintaining a lean staff on this case, Gordon and Marzotto Taylor *reduced* the risk of duplicative work.

The Court also finds that Marzotto Taylor spent a reasonable amount of time on those tasks which Defendants complain took too long, such as 4.5 hours to review and analyze hundreds of pages of deposition transcripts, 20 hours to draft the facts section for the Motion for Summary Judgment, and 30 hours to draft and revise the appellate brief—despite having a similar fact section to the Motion for Summary Judgment. ECF No. 96-4, PageID.3900–26. It also appears entirely reasonable to bill 14 hours or more per day *during trial*, as competent and zealous counsel often spend that time, if not more, attending trial during the day and preparing for the next day of trial in the evening.

### (c)   *Unrecoverable Fees*

Defendants contend Ashford included unrecoverable fees in the time records, such as fees for administrative or clerical tasks like filing documents. *See NLRB v. Bannum, Inc.*, 102 F.4th 358, 366 (6th Cir. 2024) (noting that "purely clerical or secretarial tasks," described as "non-professional work" and "ministerial in nature," should "not be billed at the same rate as pure legal work"); *B&G Mining, Inc. v. Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008) (noting that "receiving and filing correspondence presumably constitutes clerical

work" which is not reimbursable). While some entries only describe "filing" or "submitting" documents, other entries describe not only "filing" but also "finalizing" or "editing" pleadings, discovery responses, and dispositive briefs, which requires reviewing factual expositions, legal arguments, and other substantive issues constituting legal work. *See* ECF No. 96-4, PageID.3900–26. However, a few entries appear to describe clerical tasks, such as sending or submitting documents, scheduling or confirming due dates, trial dates, tech test, or trial prep, calendaring deadlines, and ordering the trial transcript. *See id.*; *see, e.g.*, *Ownby v. Colvin*, 2015 WL 1757850, at *4 (E.D. Tenn. Apr. 17, 2015) ("[A]ny entries which include filing, mailing, and scheduling should be struck or reduced, depending on the entry."); *Braun v. Ultimate Jetcharters, Inc.*, 2014 WL 3749418, at *18 (N.D. Ohio July 30, 2014) ("Counsel also billed time for tasks, such as scheduling depositions, which were clearly clerical in nature."). A line-by-line review of such clerical tasks indicates the fees should be reduced by 0.55 hours for Gordon (or $390.50) and 1.73 hours for Marzotto Taylor (or $666.05).

Defendants also allege Plaintiff is trying to recover fees for "media relations," pointing to a time entry described as "Review Detroit News piece on lawsuit." ECF No. 96-4, PageID.3901. But Plaintiff explains that counsel simply reviewed the statements both parties made to the *Detroit News* in an already published article to evaluate their impact on the case,

13

which is different from having "discussions with the press." *See Gratz*, 353 F. Supp. 2d at 941.

Furthermore, while Defendants claim counsel should not be compensated for work done before the complaint was filed, the law clearly supports an award of attorneys' fees for "the drafting of the initial pleadings and the work associated with the development of the theory of the case," *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985), or time spent "investigating the facts and researching the viability of potential legal claims," *Cox v. Shelby State Cmty. Coll.*, 194 F. App'x 267, 278 (6th Cir. 2006). To the extent Defendants contend filing FOIA requests to obtain documents constitute representation in a "state administrative proceeding" prior to filing the action, the FOIA records appear to have assisted in developing Plaintiff's theory of the case and pleadings and were introduced at trial, such that they were sought "to advance the civil rights litigation" and thus the request was clearly part of the "proceedings to enforce § 1983." *See Webb*, 471 U.S. at 241–43.

### (d) *Unsuccessful Motions*

Where the prevailing party only achieves "limited success," the district court may "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37. But a fee reduction for limited success "is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v. City of Memphis*, 404 F.3d

404, 416 (6th Cir. 2005). And "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.

In this case, despite Plaintiff's success on all of the legal claims he presented to the jury, Defendants argue that this success was "limited." They contend that hours spent on unsuccessful motions, such as the Motion for Leave to File First Amended Complaint (ECF No. 34) which was denied (ECF No. 41), and the Motion for Equitable Relief (ECF No. 76) which was granted in part and denied in part (ECF No. 84), should be eliminated as not "reasonably expended." They also claim that Plaintiff's monetary amount awarded to Plaintiff—$300,000 instead of the $800,000 requested—is indicative of the lawsuit's limited success and renders an attorneys' fees requests of more than $500,000 unreasonable.

But a court's rejection of an "alternative legal grounds for a desired outcome" raised in good faith is not a "sufficient reason for reducing a fee," nor is it "necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Hensley*, 461 U.S. at 435. Here, Plaintiff's attempt to amend his complaint to include a new allegation of retaliatory conduct was denied for undue delay, and not for being frivolous—in fact the work performed for the Motion remained useful through trial as it unearthed evidence of ongoing retaliation. And Plaintiff received significant relief in the form of monetary damages—though not the $800,000 requested, he still received roughly 120 times his economic

damages—and equitable relief—even though some of it was denied. *See, e.g.*, *RR Co. of Am., LLC v. Bishop Queen, LLC*, 2022 WL 19073917, at *2 (6th Cir. 2022) (finding that the plaintiff's results were "excellent" where the plaintiff obtained the declaratory relief it sought but was not awarded damages).

Furthermore, courts may also consider the "undesirability" of a case to decrease or increase a fee award. *See Hensley*, 461 U.S. at 430 n.3. Here, despite the potential for economic damages—10-day backpay— being so limited, Plaintiff's counsel advocated for Ashford for more than four years to vindicate his civil rights, justifying an award at the "market rate[ ] necessary to encourage competent lawyers to undertake the representation in question." *Reed v. Rhodes*, 179 F.3d 453, 456 (6th Cir. 1999) (citation omitted) (cautioning against producing "windfalls" to attorneys).

Given Plaintiff's success in this case, its undesirability, its length, and its complexity, the Court finds the hours reasonably expended.

### (e)   Fees-for-Fees

Plaintiff supplemented his request for fees in the Reply to the Motion for Attorneys' Fees, adding 13.45 hours for counsel's work on the Reply and the Motion to Review Costs. ECF No. 96-4, PageID.3925–26. While Defendants have not had an opportunity to respond to the supplemental fee request, the request was proper. *See Baker v. Colvin*, 2013 WL 1284108, at *3 (N.D. Ohio Mar. 25, 2013) (noting that it is good

practice to seek supplemental attorneys' fees for preparing and drafting a reply brief with the submission of said reply brief); *see also Communities for Equity v. Mich. High Sch. Athletic Ass'n*, 2008 WL 906031, at \*1 (W.D. Mich. Mar. 31, 2008) ("The United States Supreme Court has repeatedly cautioned that resolution of fee petitions should not become a 'second major litigation.'").

While "[a]t some point, fees in pursuit of fees are not reasonable," *Rodriguez v. Astrue*, 2012 WL 3138704, at \*3 (N.D. Ohio Aug. 1, 2012), a plaintiff can be compensated "for the time reasonably spent in establishing and negotiating his rightful claim to the fee." *Communities for Equity*, 2008 WL 906031, at \*18. Courts have noted that, "[i]n the absence of unusual circumstances," fees-for-fees hours "should not exceed 3% of the total hours in the underlying case." *Id*. Here, with the additional 13.45 hours for counsel's work on those two motions, the total "fees-for-fees" hours spent in this case was 25.15 hours, constituting 2.63% of the total hours in the underlying case. The supplemental request, therefore, is reasonable.

Thus, the Court finds the final requested fee reasonable—minus $1,056.55 deducted for clerical work—for a total of $503,948.30.

**B. Costs**

Ashford is seeking $16,332.09 in costs pursuant to § 1988 (ECF No. 87) as well as an additional $8,581.02 in taxable costs previously denied by the Clerk of the Court for failing to provide the receipts (ECF No. 90).

**1. Costs Pursuant to § 1988**

Section 1988 gives discretion to district courts to award those "incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (internal quotations and citation omitted) (noting that expenses incurred "in the course of providing legal services, such as reasonable photocopying, paralegal expenses, and travel and telephone costs" are recoverable).

Plaintiff's Verified Costs Records, accompanied by a sworn affidavit, show that he spent $16,332.09 in costs to lodge and prosecute this action, including fees for photocopies, service, filing, mailing, and mileage. ECF No. 87-3, PageID.3431–33; *see also McCombs v. Meijer, Inc.*, 395 F.3d 346, 361 (6th Cir. 2005) (finding documentation sufficient where invoices presented general descriptions of the charges and the costs were itemized in a supplemental affidavit).

The only specific cost entry Defendants take issue with involves $40 of parking fees associated with Sarah Thomas' attendance at trial on May 23, 2024. ECF No. 87-3, PageID.3432. Plaintiff responded that, while Thomas is Gordon's daughter, she is also an associate counsel of the

Deborah Gordon Law firm and attended trial for the purpose of assisting trial counsel.

Upon review, the Court finds that Ashford's requested costs are reasonable and of the type generally recoverable under § 1988. Accordingly, the Court will award Ashford's costs in the amount of $16,662.09.

### 2. Motion to Review Costs (ECF No. 90)

Plaintiff is also seeking to recover costs for Service Fees ($543.63), Court Reporter Fees ($7,600.08), and Witness fees ($437.31), which the court clerk denied as taxable costs due to Plaintiff's failure to attach the receipts. ECF Nos. 88, 89, & 90; *see also* Fed. R. Civ. Proc. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). Upon motion by a party, the Court may review the clerk's determination regarding what items are taxable as costs. Fed. R. Civ. Proc. 54(d)(1); *see also White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986) (district courts have "discretion" to deny the costs); 28 U.S.C. § 1920(2) (listing taxable costs such as "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case").

Plaintiff attached the receipts to his Motion to Review Costs. *See* Service Fees Receipts, ECF No. 90-2; Court Reporter Fees Receipts, ECF No. 90-3; Witness Fees Receipts, ECF No. 90-4. While Defendants argue

that the cost of *expedited* transcripts are not taxable, such transcripts may be taxable if they were not produced *"solely for the convenience of counsel."* E.D. Mich. Bill of Costs Handbook, Section II.C.2.a (2013). In his Bill of Costs, Plaintiff explained that the transcript of Gary Gorski's deposition was used in Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 27-7), and the transcript of Plaintiff's trial testimony was attached in support of Plaintiff's Reply to his Motion for Equitable Relief (ECF No. 83-1). In his Reply to the Motion to Review Costs, Plaintiff also explained that the transcript of David Champine's trial testimony was used during Plaintiff's cross-examination of witness Robert Neumann at trial on May 20, 2024. Therefore, the expedited transcripts were not produced "solely for the convenience of counsel" and their costs may be taxed. *See* E.D. Mich. Bill of Costs Handbook, Section II.C. (2013) ("If a transcript was used in support of a motion, counsel is required to provide . . . the title of the motion . . . . If the transcript was used at trial, the date the transcript was read into the record is to be noted[.]").

Defendants also contend the Court should deny costs related to those witnesses who were subpoenaed by Plaintiff but only called by Defendants—namely, Oesterle, Washington, and Dillard-Slaughter. However, the Bill of Costs Handbook provides that "[s]ervice fees for trial subpoenas for witnesses who have testified at trial" are taxable, while those for witnesses who "did not testify" are not taxable. Section II.B.1–

2. It also provides that "[i]f a witness is subpoenaed to the trial, but does not testify," the fees as to that witness should not be taxed. Section II.E. Furthermore, "[a]ttendance, mileage and subsistence fees" are "taxable only for the day(s) a witness testifies." Section II.E.1. Because the three witnesses did in fact testify, the witness fees are taxable.

Upon review of Plaintiff's Bill of Cost and supporting documentation, the Court finds that Plaintiff's costs in the amount of $8,581.02 are taxable. Therefore, the Motion to Review Costs Taxed (ECF No. 90) is **GRANTED** and the costs requested are awarded to Plaintiff pursuant to Fed. R. Civ. Proc. 54(d).

### C. Pre- and Post-Judgment Interest

Plaintiff also seeks an award of pre- and post-judgment interest in an amount to be calculated based on the final monetary judgment in this case, inclusive of costs and fees awarded pursuant to this Motion.

Plaintiff is entitled to post-judgment interest on the final monetary judgment in this case starting from August 14, 2024. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . Such interest shall be calculated from the date of the entry of the judgment[.]"). The post-judgment interest rate pursuant to § 1961(a) is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the date of the

judgment," or 4.45% in this case.[4] Post-judgment interest is awarded
through the date the judgment is satisfied, such that "the [p]arties are in
the best position to calculate this final number." *G.S. v. Lee*, 2023 WL
7346556, at *3 (W.D. Tenn. Nov. 7, 2023).

The award of pre-judgment interest, on the other hand, is
discretionary. *See Green v. Nevers*, 196 F.3d 627, 633 (6th Cir. 1999)
("[U]nder federal law, in the absence of explicit statutory direction on the
issue, the award of prejudgment interest is . . . in the discretion of the
court."). In this case, the Court finds that prejudgment interest on the
jury award, computed from the date the complaint was filed (March 3,
2020) until the date of the judgment (August 14, 2024) should also be
awarded "to completely compensate Plaintiff" for the true cost of money
damages he incurred during the time the action was pending. *See
Watkins v. Cty. of Genesee*, No. 13-13678, 2018 WL 4005781, at *6 (E.D.
Mich. Aug. 22, 2018)(Hood, J.) (finding that awarding prejudgment
interest on the jury award was warranted where "many years have
passed since the underlying events transpired"); *see also E.E.O.C. v.
Wilson Metal Casket Co.,* 24 F.3d 836, 842 (6th Cir. 1994) ("Prejudgment
interest helps to make victims of discrimination whole and compensates

---

[4] Federal interest rates for civil judgments can be found at
https://jnet.ao.dcn/financial    management/accounting/post-judgment-
interest-rates (last visited on Mar. 31, 2025). The interest rate applicable
under 28 U.S.C. § 1961 to a judgment entered on August 14, 2024 is the
interest rate for the preceding calendar week—the week ending on
August 9, 2024—which was "4.45%."

them for the true cost of money damages they incurred."); *W. Virginia v. United States*, 479 U.S. 305, 310 (1987) ("Prejudgment interest is an element of complete compensation[.]").

Having discretion to determine the prejudgment interest rate does not answer the question of what that rate should be, however. The Sixth Circuit held that "the statutory postjudgment framework set forth in 28 U.S.C. § 1961 is a reasonable method for calculating prejudgment interest awards." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998); *see also In re Zelazny*, 659 B.R. 544, 582 (Bankr. E.D. Mich. 2024) ("Although 28 U.S.C. § 1961 only applies to the award of post-judgment interest, many courts have used the rate in 28 U.S.C. § 1961 in also awarding pre-judgment interest."). But while § 1961(a) provides that postjudgment interest should be calculated and accrue from the *judgment date*, "[f]ederal courts have exercised broad discretion in determining the time from which prejudgment interest should accrue," such as *from the date a complaint is filed. In re Zelazny*, 659 B.R. at 583. Here, a prejudgment interest award based on the *judgment date* would be calculated at a 4.45% rate, while a prejudgment interest award based on the *complaint date* would be calculated at a 1.21% rate.[5]

---

[5] Federal interest rates for civil judgments can be found at https://jnet.ao.dcn/financial management/accounting/post-judgment-interest-rates (last visited on Mar. 31, 2025). The interest rate applicable under 28 U.S.C. § 1961 to a judgment entered on March 3, 2020 is the interest rate for the preceding calendar week—the week ending on February 28, 2020—which was "1.21%."

The goal of a prejudgment interest award is to place the plaintiff in the "position he would have occupied but for the defendant's wrongdoing," *Ford*, 154 F.3d at 618, by "fully compensat[ing] a plaintiff for the loss of the use of funds to which he or she was legally entitled," *Jones v. Elite Emergency Servs., LLC*, No. 12-0203, 2018 WL 1399585, at *2 (M.D. Tenn. Mar. 20, 2018), *aff'd*, 768 F. App'x 313 (6th Cir. 2019). While a prejudgment interest award is not meant to "penalize a defendant for wrongdoing," *Jones*, 2018 WL 1399585, at *2, "an exceedingly low prejudgment interest rate fails to make the plaintiff whole by inadequately compensating him or her for the lost use of money," *Ford*, 154 F.3d at 618. The Court notes that there is a significant difference in the prevailing interest rate in March 2020 and that of August 2024. Consequently, the Court will permit the parties to brief the question of what interest rate the Court should apply to calculate an award of prejudgment interest, as well as what the actual amount of that award should be.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 87) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion to Review Costs Taxed (ECF No. 90) is **GRANTED**.

It is **ORDERED** that the following fees and costs shall be awarded to Plaintiff:

- Attorneys' fees: $503,948.30;

- Costs: $16,332.09;

- Taxable costs: $8,581.02.

It is **FURTHER ORDERED** that Defendants shall pay Plaintiff pre-judgment interest on the total   monetary award, excluding attorneys' fees and costs, for the period between March 3, 2020 and August 14, 2024, at a rate and in an amount to be determined by the Court. Plaintiff's brief on prejudgment interest shall be filed within 21 days of the date of this Order, Defendants' response 14 days later, and any Reply within 7 days thereafter.

It is **FURTHER ORDERED** that Defendants shall pay Plaintiff post-judgment interest on the total monetary award, including attorneys' fees and costs, at the 4.45% rate prescribed under 28 U.S.C. § 1961(a), for the period between August 14, 2024 and the date the Judgment is satisfied.

**IT IS SO ORDERED.**

Dated: March 31, 2025            /s/Terrence G. Berg
                                 TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE